UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 3:05-cv-30190

| | |
|---|---|
| DALE T. VAUGHAN,<br>BARBARA J. VAUGHAN,<br>and BARBARA J. VAUGHAN PPA<br>DEREK T. VAUGHAN<br>    Plaintiffs<br><br>v.<br><br>LIEBHERR-INTERNATIONAL AG,<br>LIEBHERR-AMERICA, INC., LIEBHERR<br>MINING AND CONSTRUCTION EQUIPMENT, INC.,<br>LIEBHERR CRANE CORP., LIEBHERRR CRAWLER<br>CRANE COMPANY, LIEBHERR CONSTRUCTION<br>EQUIPMENT COMPANY, LIEBHERR MINING<br>EQUIPMENT COMPANY, LIEBHERR CRANES, INC.<br>AND GARBOSE METAL CO.<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO REMAND

I.  INTRODUCTION:

The plaintiffs filed a complaint in Franklin Superior Court on June 10, 2005, alleging negligence, breach of warranty and loss of consortium against defendants Liebherr, (a group of affiliated companies who jointly manufactured, distributed, marketed and sold the scrap grabber involved in plaintiff Dale Vaughan's injury) and Garbose Metal Company, ("Garbose") a Massachusetts company that modified and sold the scrap grabber to Mr. Vaughan's employer. On August 22, 2005, Liebherr filed a Notice of Removal, claiming federal diversity jurisdiction, asserting plaintiffs cannot show a cause of action against Garbose in warranty and defendant Garbose was fraudulently joined. The plaintiffs should be allowed to pursue a tortfeasor against whom they have viable causes of action. The plaintiffs submit this memorandum in support of

their Motion to Remand. As will be argued below, the defendants have failed to show that it is impossible for the plaintiffs to state a cause of action against Garbose under Massachusetts law, and Garbose must remain a party defendant as plaintiffs have viable causes of action in both negligence, (unaddressed by the defendant in their Notice of Removal) as well as in breach of warranty.

II.     FACTS:

On June 13, 2002, plaintiff Dale Vaughan was operating a Liebherr scrap grabber at wTe Recycling ("wTe"), his place of employment, picking up scrap materials to be fed into a shredder. The door to the cab of the scrap grabber in which Mr. Vaughan sat was open. While Mr. Vaughan was operating the scrap grabber, a piece of metal was slung from the scrap pile by the grabber, through the open door and into the cab of his machine. The metal projectile pierced his hardhat and penetrated Mr. Vaughan's skull, causing him to suffer serious and permanent brain damage.

The Liebherr scrap grabber is alleged to have been manufactured by Liebherr in Europe. Garbose purchased it new in 1989 from a United States distributor of Liebherr equipment, and used the scrap grabber in its scrap metals handling business. When Garbose ceased its operations, around March of 1998, it sold the used machine to wTe. Sometime during the time the machine was owned by Garbose, it was modified through the installation of a safety chain in the cab of the scrap grabber.

III.    ARGUMENT:

"The defendant assumes a heavy burden of establishing fraudulent joinder because it must show there is no possibility the plaintiff would be able to establish a cause of action against the non-diverse defendant in state court." O'Connor's Federal Rules- Civil Trials 2004, ch. 4,

section 5.2 (p. 188) citing to: *Hart v. Bayer,* 199 F.3d 239, 246 (5th Cir. 2000); *Pampillonia v. RJR Nabisco, Inc.* 138 F.3d 459, 461 (2d Cir. 1998). As will be expounded below, the defendants cannot meet their burden of showing no possibility that the plaintiffs will establish a cause of action because, a) the plaintiffs have stated viable and undisputed causes of action against Garbose in negligence, and b) factual disputes exist between the plaintiffs and defendants as to whether Garbose was a seller against whom a cause of action for breach of warranty lies, and those factual disputes must be resolved in favor of the plaintiffs.

    A.    <u>The Plaintiffs' Negligence Case</u>:

The defendants fail to recognize or address, in their Notice of Removal, the plaintiffs' stated causes of action based in negligence. In their complaint, the plaintiffs allege "carelessness and negligence of (Garbose), including but not limited to the following:

    a. Defendant was negligent with respect to its sale of said crane;

    b. Defendant negligently failed to take reasonable and necessary action to adequately communicate to the ultimate user(s) of its product, including the Plaintiff, adequate warnings and instructions for use through provision of the appropriate documents including the safety and use manual and printed warnings that accompanied the crane upon its sale to Garbose by the manufacturer."

The plaintiffs did not specifically detail the facts underlying their negligence claims against Garbose in their complaint.[1] However, at this stage in the proceedings, the plaintiffs offer the following evidence of negligence on the part of Garbose solely for the purpose of their Motion to Remand.

---

[1] Under the rules of notice pleading, the complaint was not required to detail the facts or plead legal theories. *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957)

During the time that Garbose owned the scrap grabber, it either installed, or caused to be installed, a chain in the cab of the scrap grabber. This chain was not original equipment, and Garbose's installation of the chain created a new, additional defect in the scrap grabber. The presence of the chain implied that the machine is intended to be used with the cab door open, and that such use was so regular as to necessitate the installation of a safety chain. (See Affidavit of crane safety consultant, Curtiss Lund, attached hereto as Exhibit A.)

Immediately after Mr. Vaughan's accident, the Department of Labor, Office of Safety and Health Administration (OSHA) conducted an investigation. On August 27, 2002, OSHA issued a citation to wTe for violation of 29 CFR 1910.212(a)(1), as "machine guards such as protective shields and or barriers were not provided or used to protect the operator of the Liebherr R932 crane in an area where the hazard of being struck by projectiles or other debris existed." While Garbose was not the employer during whose tenure the violation was found, as an employer itself, Garbose would be bound by the OSHA regulations. The installation of the safety chain which implied, facilitated and promoted operation of the scrap grabber with the door open, constitutes evidence that Garbose also acted in violation of the OSHA regulation. While not negligence per se, evidence showing that a statute was violated is some evidence of negligence. *Herson v. New Boston Garden Corp.*, 40 Mass. App. Ct. 779, 793 (1996) citing to *Lindsey v. Massios*, 372 Mass. 79, 83 (1977). While plaintiffs recognize that at least under the Massachusetts rules of evidence, an OSHA citation is not admissible if offered as evidence of negligence against the employer to whom it is issued, (*Herson v. New Boston Garden Corp.*, 40 Mass. App. Ct. 779, 793 (1996)) evidence that Garbose engaged in the same conduct for which wTe was cited may constitute evidence of Garbose's own negligence. Garbose sold to wTe a machine that it had negligently altered to facilitate and promote an unsafe use. While the

plaintiffs contend that these facts alone constitute evidence of negligence sufficient to defeat any claim that they have no possible causes of action, the plaintiffs also expect to discover further evidence of negligence on the part of Garbose. (Although the plaintiffs have propounded discovery, Garbose has not yet answered the complaint or responded to the discovery requests.) The plaintiffs would expect to learn the circumstances under which the chain was installed, the frequency with which the scrap grabber was used by Garbose with the door open, and whether Garbose made any representations to its buyer, wTe, concerning the operation of the grabber with the door open. In summary, the plaintiffs have causes of action in negligence against Garbose, arising from the fact that Garbose affirmatively created a defective and hazardous condition which causally related and contributed to the occurrence of Mr. Vaughan's accident.

    As the seller of used equipment manufactured by Liebherr, Garbose "would not be liable in an action for negligence unless it knew or had reason to know of the dangerous condition that caused the accident. Restatement (Second) of Torts sec. 402 (1965)." *Fernandes v. Union Bookbinding Co.; Ionics, Inc.,* 400 Mass. 27, 32 (1987). In that case, the Supreme Judicial Court upheld the trial judge's jury instruction that the seller of used goods in an isolated transaction "could only be held liable in negligence for patent, as opposed to latent, defects." *Fernandes,* supra. Inasmuch as Garbose created the defect (of the safety chain which wrongfully encouraged use of the scrap grabber with an open door,) defendants cannot claim that said defect was latent or unknowable. Its existence was patently known to Garbose. The plaintiffs thus have a strong case in negligence, pursuant to the Restatement (Second) of Torts, section 402.

    The plaintiffs suggest that whether the evidence is sufficient to hold Garbose to the requirement of section 402 of the Restatement (Second) of Torts as a seller of used equipment, is a question of fact that may not be decided in the context of the present Motion to Remand. In

*Fernandes,* the trial judge allowed the plaintiffs' negligence claim to go to the jury on less compelling evidence than that which the plaintiffs here present. In that case, the seller of a used press had sold only two pieces of equipment in a fifteen to twenty year period. The defendant seller had never had possession of the press in question, the press had never even been on the defendant's premises, it was not operated regularly by employees of the defendant seller, and the seller did not perform any repairs to the press. Unlike the defendant in *Fernandes*, Garbose, as the seller of the used scrap grabber, had had continuous possession of the machine, the scrap grabber had been operated regularly by Garbose employees and it was, presumably, altered and perhaps repaired by Garbose. (In addition, as will be agreed below, there is a factual dispute between the parties as to how many sales of equipment Garbose made.) The plaintiffs suggest that Garbose was a seller to whom section 402 would apply, and that the presence of the chain, which was installed either by, or at the request of Garbose, constituted a patent defect of which Garbose most certainly knew or had reason to know. On these facts, a jury would be warranted in finding negligence. At a minimum, these facts support a cause of action in negligence.

Yet another basis for liability in negligence, apart from liability as a seller of goods, is founded on the principle enunciated in the Restatement (Second) of Torts, § 388, which, as noted in the Scope Note, applies not only to sellers of chattel, but equally "to all persons who in any way or for any purpose supply chattels for the use of others…"

§ 388. Chattel Known to be Dangerous for Intended Use, provides:

> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
> (a)   knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
> (b)   has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Even if Garbose is ultimately not held to the duties of a seller, it has liability as a mere supplier of the scrap grabber who knew of and failed to warn of the scrap grabber's dangerous condition.

B.   The Plaintiffs' Case in Warranty:

The defendants claim that "based on the plaintiffs' complaint and on the facts listed below, however, it is impossible for plaintiffs to state a cause of action against Garbose Metal Co." (Notice of Removal, page 2.) The defendants' argue, essentially, that Garbose was not a seller bound by the warranties of merchantability because "the sale was an isolated sale," (Notice of Removal, page 4, par. h,) and "because Garbose Metal Co. has never been a designer, manufacturer, or dealer of material handlers or cranes, it did not have the expertise to determine whether the subject material handler had a defect in its design or manufacture at the time it sold the same to wTe Recycling; nor was it aware of any such design or manufacturing defect at that time." (Notice of Removal, page 4, par. i.) These two factual claims, upon which the defendants entire argument rests, are disputed and rebutted by the plaintiffs.

In his affidavit, S. Bernard Garbose states, "8. The sale was an isolated sale: Garbose Metal Co. had never previously sold to anyone else a material handler manufactured by Liebherr." While it may be true that Garbose had never previously sold a material handler sold by Liebherr, it is not true that the sale was an isolated one. According to Mr. Dean Swift, general manager of wTe, Garbose offered other pieces of machinery for sale to wTe, and sold other pieces of equipment, though not to wTe. Garbose solicited sales, according to Mr. Swift, by sending out a general notice to wTe, (and presumably to other metal recyclers) announcing that Garbose was going out of business and that its equipment was for sale. (See Affidavit of

Danielle Barshak, attached hereto as Exhibit B.) While the plaintiffs have not yet discovered how many other pieces of equipment were sold, or when and to whom, the plaintiffs believe that discovery will reveal that other pieces of equipment were sold by Garbose at or around the time of the sale of the Liebherr machine to wTe.

"The standard for determining if a defendant is a merchant is whether the defendant regularly deals in goods of the kind involved or otherwise has a professional status with regard to the goods such that it could be expected to have specialized knowledge or skill peculiar to those goods. However, the fact that a person is not in the business of buying and selling a particular kind of goods does not mean that he or she is not a merchant with respect to such goods for the purpose of the implied warranty of merchantability, since the only apparent sine qua non of merchant status is that the sale at issue not be an isolated sale of goods. Thus the inquiry into whether a particular seller is a merchant for the purpose of the implied warranty of merchantability is highly dependent on the factual setting of the transaction in question." Mass. Jur. Personal Injury and Torts, c. 33.72. (Citing to *Ferragamo v. MBTA* 395 Mass. 581, 481 NE2d 477, CCH Prod. Liab. Rep. par. 10860, 41 UCCRS 304.)

The plaintiffs also dispute the defendants' contention that Garbose "did not have the expertise to determine whether the subject material handler had a defect in its design or manufacture at the time it sold the same to wTe Recycling; nor was it aware of any such design or manufacturing defect at that time." Garbose had used the machine in its business for ten years, and had created a defect that contributed to Mr. Vaughan's accident. Under those circumstances, it is equally likely that Garbose had sufficient expertise to determine that the machine as manufactured, and as modified by Garbose, had a defect.

While the plaintiffs do not contend that Garbose regularly dealt in scrap grabbers or such machinery, they do suggest that whether Garbose had such specialized knowledge or skill with respect to the scrap grabber as to vest it with the status of a merchant in this case is a question of fact to be determined by the ultimate finder of fact after full discovery of all the circumstances surrounding the sale. "The question whether a seller of used equipment is a merchant of goods of that kind is to be determined according to the circumstances of the case. ." Mass. Jur. Personal Injury and Torts, c. 33.73.

"The court must resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the nonremoving party." O'Connor's Federal Rules- Civil Trials 2004, ch. 4, section 5.2 (p. 188) citing to *Hart v. Bayer,* 199 F.3d 239, 246 (5th Cir. 2000). The plaintiffs dispute that the sale of the Liebherr materials handler was an isolated sale, and dispute whether Garbose under the circumstances was a merchant. These genuine questions of fact, which pertain to whether or not the plaintiffs have a viable cause of action against Garbose in warranty, must be resolved, in the context of this Motion to Remand, in favor of the plaintiffs.

IV.   CONCLUSION

The plaintiffs need not convince the court considering a motion to remand that there is a strong likelihood that they will ultimately prevail at trial. Disputed questions of fact and ambiguities in the controlling state law are to be resolved in the plaintiffs' favor. See, *Carrierre v. Sears, Roebuck & Co.,* 893 F. 2d (5th Cir. 1990) cert. denied 111 S. Ct. 60., *Perez v. AT&T Co.* 139 F.3d 1368, 1380 (11th Cir. 1998)

"The decided cases make it clear that in general there need only be a possibility that a right to relief exists under the governing law to avoid a finding of fraudulent joinder by the court,

and the plaintiff's ultimate failure to obtain a judgment is immaterial." Wright, Miller & Cooper; Federal Practice and Procedure: Jurisdiction 3d, § 3723.

"Any doubt about the propriety of removal is construed against removal." See: *Diaz v. Sheppard*, 85 F. 3d 1502, 1505 (11th Cir. 1996), *Duncan v. Stuetszle*, 76 F.3d 1480, 1485 (9th Cir. 1996) *Brown v. Francis* 75 F.3d 860, 865 (3d Cir. 1996, 16 Moore's Federal Practice 3d. sec. 107.05. O'Connor's Federal Rules* Civil Trials (2004), ch. 4, sec. 5.

The plaintiffs suggest that the defendants have not met their burden of showing no possibility that the plaintiffs can establish a cause of action against Garbose under Massachusetts law. The plaintiffs request that this Court allow their Motion to Remand. Plaintiffs further request that this Court order, pursuant to 28 U.S.C. § 1447(c) that the defendants pay plaintiffs' costs, expenses and attorney fees incurred as a result of the improper removal of this action.

Respectfully Submitted,
Dale T. Vaughan, Barbara J. Vaughan
Barbara J. Vaughan, ppa Derek T. Vaughan,
By Their Attorneys,

_____
John J. Stobierski, Esq.
BBO#549722
Danielle J. Barshak, Esq.
BBO # 553347
Stobierski & Stobierski
377 Main Street
Greenfield, MA  01301
(413)774-2867
Dated:  September 19, 2005

## CERTIFICATE OF SERVICE

I, John J. Stobierski, Attorney for the Plaintiffs hereby certify that I have mailed by first class mail, postage prepaid a copy of the foregoing to the attorney for the defendant Liebherr International, John F. Dalsey, Dalsey, Ferrara & Albano, 73 State Street, Suite 101, Springfield, MA 01103-2094 and the attorney for defendant, Garbose, Rita D. Lu, 327 Saint Paul Street, Suite 3, Brookline, MA 02446 on this 19th day of September, 2005.

_____
John J. Stobierski

# EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN MASSACHUSETTS DISTRICT

CIVIL ACTION NO. 3:05-CV-30190

DALE T. VAUGHAN,                                              )
BARBARA J. VAUGHAN,                                           )
and BARBARA J. VAUGHAN PPA                                    )
DEREK T. VAUGHAN                                              )
    Plaintiffs                                              )
                                                              )
v.                                                            )
                                                              )
LIEBHERR-INTERNATIONAL AG,                                    )
LIEBHERR-AMERICA, INC., LIEBHERR                              )
MINING AND CONSTRUCTION EQUIPMENT, INC.,                      )
LIEBHERR CRANE CORP., LIEBHERRR CRAWLER                       )
CRANE COMPANY, LIEBHERR CONSTRUCTION                          )
EQUIPMENT COMPANY, LIEBHERR MINING                            )
EQUIPMENT COMPANY, LIEBHERR CRANES, INC.                      )
AND GARBOSE METAL CO.                                         )
    Defendants                                              )

### AFFIDAVIT OF CURTISS M. LUND

I, Curtiss M. Lund, of 79 Quartermaster Row, South Yarmouth MA 02664 hereby affirm as follows:

1. I am a consultant in cranes and crane safety, and have worked as a crane safety consultant since 1982. A copy of my curriculum vitae is attached hereto as Exhibit "A."

2. On June 3, 2005, I went to the facility of wTe Recycling, located in Greenfield, Massachusetts where I conducted an inspection of the Liebherr scrap grabber in which Mr. Dale Vaughan was injured.

3. In the course of my inspection, I noticed a chain and hook that had been installed in the cab of the scrap grabber. Based upon my knowledge of cranes, as well as my review of Liebherr manuals and other materials, I can conclusively state that the chain and hook were not installed at the Liebherr manufacturing facility.

4. I questioned Mr. Swift, a representative of wTe, about the chain. He informed me that wTe had not installed the chain and hook, and that those pieces were already on the scrap grabber when wTe purchased the scrap grabber from Garbose Metal Co. He also told me that an attorney and a representative from Liebherr inspected the scrap

grabber shortly after Mr. Vaughan's accident, and told him that the chain was not original equipment. The Liebherr representative who inspected the scrap grabber had many questions about and was quite interested in the chain.

5. The chain and hook apparently served the purpose of restraining the operator of the scrap grabber when it is in operation, and help prevent the operator from falling from the cab.

6. It appeared to me that the purpose of the chain was to provide a safety measure for the operator of the scrap grabber at times when the scrap grabber was being operated with the cab door open.

7. The chain and hook implied that operation of the scrap grabber with the cab door open was a permitted use.

8. In my opinion, it would be unsafe for the scrap grabber to be operated with the cab door open at a recycling facility.

9. While there is no specific OSHA regulation that governs scrap grabbers, in my opinion, operation of the scrap grabber with the cab door open would be unsafe.

10. I understand that wTe was cited by OSHA, in connection with Mr. Vaughan's accident, for failing to provide machine guards such as protective shields and/or barriers in an area where the hazard of being struck by projectiles or other debris existed. That hazard existed only when the door to cab of the scrap grabber was open during its operation.

Signed under the pains and penalties of perjury this 12th day of September, 2005.

_____
Curtiss M. Lund

# CURRICULUM VITAE

### CURTISS M. LUND – CRANE CONSULTANT
79 Quartermaster Row, So. Yarmouth, MA 02664
PHONE (508) 394-6627
CELL (508) 878-5564
Fax (508) 398-1716

| | |
|---|---|
| 2002 to Present | Curtiss M. Lund, Crane Consultant. So. Yarmouth, MA. Services provided: Crane & Rigging Accident Investigations, Expert Witness Testimony, and Special Projects involving Cranes And Lifting. |
| 1994 to 2002 | President of Curt Lund, Inc. So. Yarmouth, MA. Services provided: Crane Inspections and Certifications, Accident Investigations, Expert Witness Testimony, Crane Safety Training Programs and Special Projects involving Cranes and Lifting. |
| 1986 to 1994 | Crane Safety Consultant and associated with Bob DeBenedictis, Inc., New Smyrna Beach, Florida. Services provided: Crane Inspections and Certifications, Accident Investigations, Expert Witness Testimony and Crane Safety Training Programs. |
| 1982 to 1986 | Crane Safety Consultant and associated with Bob DeBenedictis, Inc., and Sales-Manager for Julian Crane and Equipment Corp., Watertown, MA. Duties involved Sales and Rentals of Cranes. (Conventional Lattice Boom Truck and Crawler Cranes, Tower Cranes, Hydraulic Telescopic Boom Rough Terrain Cranes, Hydraulic Telescopic Boom Truck Cranes), Concrete Pumps and Personnel/Material Hoists in the New England Area. |
| 1979 to 1982 | Operations Manager for the Boston area office of B.T. Equipment Company, Smithfield, Rhode Island. Duties involved Rental Sales and all related areas for Cranes, Concrete Pumps, and Personnel/ Material Hoists to the Construction Industry in New England. |
| 1979 – 1979 | Sales-Engineer for Crane Service and Equipment Corp., Somerville, MA. Duties involved Sales and Rentals of Cranes (Manitowoc Crane Distributor), and Concrete Pumps in the New England Area. |
| 1977 – 1979 | Regional Manager for Crane Inspection and Certification Bureau, Orlando, Florida. Duties involved Crane Inspection and Certifications, Accident Investigations and Crane Safety Training |

|  |  |
|---|---|
|  | Programs. |
| 1962 – 1977 | Operations Manager for Julian Crane and Equipment Corporation, Watertown, MA. Duties involved Dispatching Rental Cranes, Over-seeing Maintenance, Parts Requirements, New Machine Acquisitions, (in 1972 Fleet consisted of 28 Truck, Crawler and Hydraulic Cranes). Safety Programs, Sales and Rentals of Cranes, Concrete Pumps, Concrete Conveyors, Tower Cranes and Personnel/Material Hoists. |
| 1961 – 1962 | Inside Sales-Co-coordinator for Genalco, Inc, Needham Heights, MA. Duties involved telephone and inside sales for Contractors and Municipal Supplies in the New England Area. |
| 1960 – 1961 | Parts Counterman for Perkins Machinery Co., Needham Heights, MA. Duties involved inside sales of parts for Caterpillar Tractor Dealership in MA and RI. |
| 1959 – 1960 | Inside Sales Co-coordinator for Genalco, Inc, Needham Heights, MA. Duties Involved telephone and inside sales for Contractors and Municipal Supplies in the New England Area. |
| 1958 – 1959 (Part Time) | Rowan Motor Sales, Natick, MA. Duties involved New and Used Car preparation for customer delivery and customer service relations. |
| 1957 – Summer | Town of Natick, MA. Laborer with Water and Sewer Department. Duties included Manual Labor, Driving Trucks and Operating Heavy Equipment. |
| 1953 – 1957 | Fairway Sports World, Natick, MA. Maintaining and Operating Mowing Machines Farm Tractor, Golf Driving Equipment, Bowling Alley Machines, Building Maintenance, and Counter Sales and Service to customers. |

## EDUCATION

| | |
|---|---|
| Elementary | Ansonia and Seymour, CT – Graduated 1953 |
| High School | Natick High School, Natick, MA. – Graduated 1957 |
| College | University of Rhode Island – 1 Semester 1958 |
| Business School | Burdett College, Boston, MA – Sales Management Associate Degree – 1959 |

# EXHIBIT B

UNITED STATES DISTRICT COURT
WESTERN MASSACHUSETTS DISTRICT

CIVIL ACTION NO. 3:05-CV-30190

| | |
|---|---|
| DALE T. VAUGHAN,<br>BARBARA J. VAUGHAN,<br>and BARBARA J. VAUGHAN PPA<br>DEREK T. VAUGHAN<br>    Plaintiffs<br><br>v.<br><br>LIEBHERR-INTERNATIONAL AG,<br>LIEBHERR-AMERICA, INC., LIEBHERR<br>MINING AND CONSTRUCTION EQUIPMENT, INC.,<br>LIEBHERR CRANE CORP., LIEBHERRR CRAWLER<br>CRANE COMPANY, LIEBHERR CONSTRUCTION<br>EQUIPMENT COMPANY, LIEBHERR MINING<br>EQUIPMENT COMPANY, LIEBHERR CRANES, INC.<br>AND GARBOSE METAL CO.<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## AFFIDAVIT OF DANIELLE J. BARSHAK

I, Danielle J. Barshak, hereby affirm as follows:

1. I am an attorney with the law firm Stobierski & Stobierski. This firm represents the plaintiffs in the above captioned matter. I submit this Affidavit in connection with the plaintiff's Motion to Remand.

2. On September 8, 2005, in an effort to conduct informal discovery, I conveyed certain questions to Dorothy Varon, Esq., of the law firm Robinson Donovan, located in Springfield, Massachusetts. That firm represents the insurer for wTe. Those questions were presented by Attorney Varon to wTe. The answers provided by wTe were reported orally to me by Attorney Varon.

3. To my question whether Garbose offered any pieces of machinery or equipment for sale to wTe other than the Liebherr crane, I was informed by Attorney Varon that wTe's response was "yes." I was also informed by Attorney Varon that to wTe's knowledge, Garbose offered for sale machines or equipment to entities other than wTe.

4.  Attorney Varon reported to me that a representative of wTe told her that prior to the sale of the Liebherr machine, Garbose had sent out a general notice announcing that it was going out of business and that its equipment was for sale.

Signed under the pains and penalties of perjury this 14th day of September, 2005.

_____
Danielle J. Barshak, Esq.