IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DALE T. VAUGHAN, BARBARA J.
VAUGHAN, and BARBARA J. VAUGHAN
PPA DEREK T. VAUGHAN

    Plaintiffs,

v.                                  Case No. 3:05-cv-30190-MAP

LIEBHERR-INTERNATIONAL AG,
LIEBHERR-AMERICA, INC., LIEBHERR
MININING AND CONSTRUCTION EQUIPMENT,
INC., LIEBHERR CRANE CORP., LIEBHERR
CRAWLER CRANE, LIEBHERR CONSTRUCTION
EQUIPMENT COMPANY, LIEBHERR MINING
EQUIPMENT COMPANY, LIEBHERR CRANES,
INC., and GARBOSE METAL CO.,

    Defendants.

---

**LIEBHERR DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND AND
IN SUPPORT OF DEFENDANTS' MOTION TO DROP A MISJOINED PARTY**

---

The defendants LIEBHERR-AMERICA, INC., et al., by and through their undersigned attorneys, submit the following in opposition to plaintiffs' pending motion to remand and in support of their motion to drop a misjoined party under Fed.R.Civ.P. 21.

INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' move to remand this case on grounds that one of the defendants in the case – Garbose Metal Company ("Garbose"), the original owner of a material handler that is the subject of this product liability action – is subject to a viable cause of action under applicable Massachusetts law, and that it was not "fraudulently joined" for the

purpose of frustrating jurisdiction in the federal courts, as asserted in defendants' Notice of Removal.

In their motion to remand, plaintiffs do not contest facts set forth in defendants' Notice of Removal, which states (among other things) that Garbose purchased the material handler in connection with its business in scrap metal; that it has never been in the business of designing, manufacturing, or selling material handlers; that in connection with winding down its business, it transferred the machine to the injured plaintiff's employer for storage or sale; that when the employer purchased the machine, Garbose provided it with the machine's manual; that Garbose was never aware that the employer was relying on it to select a suitable machine (if indeed such was the case); and that Garbose was unaware of any defect in the machine at the time of sale. Because plaintiffs fail to contest these facts, they must be taken as true. *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97-98 (1921); *Mills v. Allegiance Health Corp.*, 178 F. Supp.2d 1, 6-7 (Mass. 2001).

Rather than contest these facts, plaintiffs allege additional facts, not set forth in their complaint, and argue that they support a cause of action against Garbose. First, plaintiffs submit the affidavit of a consulting mechanical engineer in which he opines that the manufacturer did not install a chain and hook that could be draped across the entrance of the machine's cab door, and in which he relates a conversation he had with a representative of plaintiff's employer to the effect that the employer did not install the chain and hook and that a representative of the manufacturer had informed him (the employer's representative) that the chain and hook were not part of the original design. Second, plaintiffs submit the affidavit of their attorney, in which she relates a

VAUGHAN, et al. v. LIEBHERR-AMERICA, INC., et al.
DEFENDANTS' MEMORANDUM OF LAW

2

conversation with another representative of plaintiff's employer to the effect that he was aware that Garbose was selling a number of its physical assets at around the time it was winding down its business, not just the material handler. Based on this "evidence," plaintiffs argue that they can state a viable cause of action against Garbose sounding in negligence and strict tort liability.

As will be set forth more fully below, plaintiffs' new "facts" are merely unsupported allegations, which in one case happens to be wrong. (The affidavits are not based on personal knowledge or sufficient data and contain hearsay upon hearsay. See defendants' motion to strike plaintiffs' affidavits, concurrently filed herewith.) Moreover, the material handler was indeed sold by defendant Liebherr-America, Inc., with the chain and hook installed as standard equipment. (See Declaration of Wilfried Wotke, par. 4, attached.)

Even so, the undisputed facts of this case fail to state a cause of action against Garbose under applicable Massachusetts law. This is because (1) plaintiffs have not and cannot show that Garbose is a "merchant" of material handlers; (2) plaintiffs have not and cannot show that the material handler had a "peculiar" as opposed to an "ordinary" purpose when sold to and used by the buyer, or that Garbose should have known of any such peculiar purpose; and (3) plaintiffs have not and cannot show that Garbose knew or had reason to know of a defect in the material handler at the time it was sold, or that Garbose acted unreasonably in believing that the buyer would realize any such defect – all of which will be set forth more fully below.

In the sections that follow, defendants will set forth the procedure for determining whether a plaintiff has fraudulently joined a party for purposes of frustrating diversity

VAUGHAN, et al. v. LIEBHERR-AMERICA, INC., et al.
DEFENDANTS' MEMORANDUM OF LAW

3

jurisdiction; the standard of review for determining fraudulent joinder; the law of Massachusetts concerning when and under what circumstances a non-merchant seller of used goods may be subject to liability; and defendants' argument concerning why plaintiffs are unable to state a cause of action against Garbose.

In further support of this memorandum, and referred to throughout, are defendants' previously filed Notice of Removal (including the attached affidavit of Bernard Garbose); and the defendant's recently filed motion to drop a misjoined party, motion to strike the affidavits of plaintiffs' expert and attorney, and declaration of Wilfried Wotke.

### PROCEDURE FOR DETERMINING A MOTION TO REMAND WHERE FRADULENT JOINDER IS ASSERTED

The procedure for determining whether a party has been fraudulently joined is detailed in *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97-98 (1921). There the Supreme Court ruled,

> A civil case, at law or in equity, presenting a controversy between citizens of different States and involving the requisite jurisdictional amount, is one which may be removed from a state court into the District Court of the United States by the defendant, if not a resident of the State in which the case is brought, § 28 Jud. Code; and this right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy. *Wecker v. NationalEnameling & Stamping Co.*, 204 U.S. 176, 185-186. If in such a case a resident defendant is joined, the joinder, although fair upon its face, may be shown by a petition for removal to be only a sham or fraudulent device to prevent a removal; but the showing must consist of a statement of facts rightly leading to that conclusion apart from the pleader's deductions. *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152. The petition must be verified, § 29 Jud. Code, and its statements must be taken by the state court as true. *Illinois Central R.R. Co. v. Sheegog*, 215 U.S. 308, 316. If a removal is effected, the plaintiff may, by a motion to remand, plea or answer, take issue with the statements in the petition. If he does, the issues so arising must be heard and determined by the District Court, *Stone v. South Carolina*, 117 U.S. 430, 432; *Chicago, Rock Island & Pacific Ry.*

*Co.* v. *Dowell*, 229 U.S. 102, 113; *Chesapeake & Ohio Ry. Co.* v. *Cockrell, supra,* pp. 152, 154, and at the hearing the petitioning defendant must take and carry the burden of proof, he being the actor in the removal proceeding. *Carson* v. *Dunham*, 121 U.S. 421, 425-426. But if the plaintiff does not take issue with what is stated in the petition, he must be taken as assenting to its truth and the petitioning defendant need not produce any proof to sustain it. *Kentucky* v. *Powers*, 201 U.S. 1, 33-34, 35.

Naturally, this procedure has been routinely followed by the Federal Courts of Appeal (*see, e.g., Rictchey v. UpJohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir. 1998)) and, in the District Courts, in particular, the District Court of Massachusetts (*see, e.g., Mills v. Allegiance Health Care Corporation,* 178 F. Supp.2d 1, 6-7 (2001)).

In the event a court finds that a party has been fraudulently joined, the court may drop the party from the lawsuit, pursuant to motion brought by any party. Fed.R.Civ.P. 21; *Covington v/ Indemnity Ins. Co.,* 251 F.2d 930, 934 (5th Cir. 1958) (dismissal by district court of fraudulently joined party was proper procedure); *Grasnik v. State Farm Ins. Co.,* 285 F. Supp. 245, 248-49 (E.D.Cal. 1992) (dismissal by district court, under Fed.R.Civ.Pro. 21, of fraudulently joined party was proper procedure); *see Carey v. Board of Governors of the Kernwood Country Club,* 337 F. Supp.2d 339, 341, 343; *Mills,* 178 F. Supp.2d at 2, 9.

## STANDARD FOR DETERMINING FRAUDULENT JOINDER

After a court makes a determination as to the facts – pursuant to the procedure set forth in *Wilson, supra* -- the court is then to decide whether, given such facts, a cause of action against may *fairly* be stated against the non-diverse party. *Mills,* 178 F. Supp.2d at 4-5 ("The linchpin of the fraudulent joinder analysis is whether the joinder of the non-diverse party has a reasonable basis in law and fact. . . . A mere theoretical possibility of recovery under state law does not suffice to preclude removal."); *see Polyplastics, Inc. v.*

VAUGHAN, et al. v. LIEBHERR-AMERICA, INC., et al.
DEFENDANTS' MEMORANDUM OF LAW

5

*Transconex, Inc.*, 713 F.2d 875, 877 (1st Cir. 1983) (stating in dicta that "a finding of fraudulent joinder bears an implicit finding that the plaintiff has failed to state a cause of action against the fraudulently joined defendant.").

It is unnecessary, however, for the defendant to prove, or for the court to determine, whether the plaintiff acted with intent to defraud when joining a non-diverse party. *Coughlin v. Nationwide Mut. Ins. Co.*, 776 F. Supp. 626, 628, n.3 (D. Mass 1991) ("Fraudulent joinder is a term of art used to describe not only the deceptive practice of joining a resident defendant solely to defeat diversity, but also any improper joinder.").

## LEGAL ANALYSIS

In their motion to remand, plaintiffs do not take issue with the facts set forth and supported in the defendants' Notice of Removal. As such, these facts must be taken as true. *Wilson*, 257 U.S. at 97-98.

The uncontested and undisputed facts, therefore, are that Garbose was the original purchaser of the subject material handler; that it used it in its scrap metal business for some eight years; that it sold it used to plaintiff's employer, who is also in the scrap metal business; that it provided the machine's manual to the employer at the time of sale; that it was never in the business of designing, manufacturing or dealing goods of this kind (i.e., like the material handler); that it made no representations to the employer concerning the machine; and that it was unaware of any defect in the machine at the time of sale. (See Notice of Removal, pars. 3 (a)-(k); Affidavit of Bernard Garbose, pars. 1-12.)

In their complaint, plaintiffs allege that Garbose is subject to liability for breach of the implied warranty merchantability (Count V), for breach of the implied warranty of fitness for a particular purpose (Count VI) and for negligence (Count VII). (Counts X and

VAUGHAN, et al. v. LIEBHERR-AMERICA, INC., et al.
DEFENDANTS' MEMORANDUM OF LAW

6

XI against Garbose are for the loss of consortium of the injured plaintiff's wife and child and incorporate the prior counts.)

Plaintiffs have not moved to amend their complaint. Even if they had, however, the right to removal is "to be determined according to plaintiff's pleading at the time of the petition for removal." *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939) (holding that a second amended complaint filed subsequent to removal is not considered when determining whether removal was appropriate); *Mills*, 178 F. Supp.2d at 4.

Plaintiffs fail to state a claim under these three theories of recovery, either in their pleadings or given the undisputed facts of this case. The reasons follow.

***1. Plaintiffs fail to allege necessary elements of an action for breach of the implied warranty of merchantability; moreover, the undisputed facts preclude the possibility for stating such an action.***

Under Massachusetts law, the elements of an action for breach of the implied warranty of merchantability are as follows: "First: that the defendant was a merchant dealing in goods of this kind; Second: that the buyer bought this item from the defendant; and Third: that at the time of the sale the item was not fit for the ordinary purpose for which the items are sold." Model Jury Instructions/District Court, Instrn. 7.06 (copy attached); *see also* Mass. Superior Ct. Civil Prac. Jury Instrn., §§ 11.3.1, 14.1.17 (copies attached).

Plaintiffs fail to allege in their complaint that Garbose "was a merchant dealing in goods of this kind." It is undisputed, moreover, that Garbose sold the used subject material handler in connection with the winding down of its business, as an isolated sale, and that it has never been in the business of designing, manufacturing or dealing in goods of this kind. (See Notice of Removal, pars. 3 (d) and (h); Affidavit of Bernard Garbose,

VAUGHAN, et al. v. LIEBHERR-AMERICA, INC., et al.
DEFENDANTS' MEMORANDUM OF LAW

7

pars. 5, 6 and 8.) Any claim for breach of the implied warranty of merchantability against Garbose must fail, therefore, for failure of an essential element. *See* Mass. Gen. Laws Ann. Ch. 106 §§ 2-104 (1), 2-314, Comment 3 ("A person making an isolated sale of goods is not a 'merchant' with the meaning of the full scope of this section and, thus, no warranty of merchantability would apply"); *Fernandes v. Union Bookbinding Co.*, 400 Mass. 27, 34, 507 N.E.2d 728 (1987) (finding a seller of used goods is subject to breach of warranty action, but he must be a "merchant" of the same); *Ferragamo v. Massachusetts Bay Transportation Authority*, 395 Mass. 581, 586, 481 N.E.2d 477 (1985) (affirming that only a "merchant" is subject to breach of warranty).

In their motion to remand, plaintiffs argue that because Garbose sold other items in addition to the material handler while winding down of its business, it should therefore be deemed a "merchant" for purposes of the subject machine sale. (The evidence in support of this claim is hearsay. Nonetheless, defendants are prepared to accept the truth of the same for the sake of argument.) In support of this proposition, plaintiffs cite *Ferragamo, supra*. That case is inapposite to plaintiffs' purpose here, however.

In *Ferragamo*, plaintiff's decedent was killed by chemicals he encountered while cutting up used trolley cars for scrap. Plaintiff sued a public transportation company under breach of warranty based on the fact that the company had originally used the cars and that it later sold them to the scrap yard where the decedent worked. A jury returned a verdict in favor of the plaintiff, but the trial court overturned it, finding that the transportation company was not a "merchant" of the used trolley cars. Plaintiff appealed.

The Supreme Judicial Court reversed the trial court's ruling and remanded for entry of the jury's verdict against the transportation company. *Ferragamo*, 395 Mass. at

VAUGHAN, et al. v. LIEBHERR-AMERICA, INC., et al.
DEFENDANTS' MEMORANDUM OF LAW

8

593. In rationalizing its ruling, the court began by considering the definition of a "merchant," first noting that under 2-104 (1), a merchant was one "who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill;" but then noting under 2-314 (the operable statue), that the definition of merchant is more restrictive than 2-104 (1) – that it does not include "everyone who is engaged in business and requires a professional status as to particular kinds of goods." Id. at 586.

The court reconciled these differing definitions by finding that a "merchant," for purposes of 2-314, is one who "regularly deals in goods of the kind involved or otherwise has a professional status with regard to the goods involved such that it could be expected to have specialized knowledge or skill peculiar to those goods." *Id.*; *see also Crooper v. Rego Distribution Center, Inc.*, 542 F. Supp.2d 1142, 1154 (D. Del. 1982) (cited favorably in *Ferragamo* and developing said definition of "merchant").

The court next found that the evidence at trial showed that the public transportation company did more than just make an isolated sale of its used trolley cars for scrap, as claimed. It found that there was evidence that the company had designed the cars and had them built to its specifications; that it had rebuilt, refurbished and generally maintained them over some twenty-five years; that it perhaps installed the very chemical compound (in the form of plastic containing PCV) that effected the decedent's death; that it knew of the dangerous properties of the plastic, by virtue of a prior incident; and that it

VAUGHAN, et al. v. LIEBHERR-AMERICA, INC., et al.
DEFENDANTS' MEMORANDUM OF LAW

9

had over time sold several such trolley cars for scrap. *Ferragamo*, 395 Mass. at 583, 587, n.8, n.9, 589.

Applying said definition of "merchant," the Supreme Judicial Court held that there was sufficient evidence to find that the public transportation company "possessed specialized knowledge of trolley cars, and because the transaction was not an isolated sale . . . [, it was] a merchant with respect to used trolley cars." *Id.* at 589; *see also Crooper*, 542 F. Supp.2d at 1154 (where, applying said definition of "merchant," a chemical company was denied summary judgment on a breach of warranty claim involving a chemical holding and distribution system installed at its plant based on evidence that the company prepared plans for the system, had it built to its specifications, and had requested the addition of a mechanical feature that became the basis of the lawsuit).

In the present case, the undisputed evidence is that Garbose was never involved in the design, manufacture, or dealing of the subject machine (Notice of Removal, par. 3 (d); Affidavit of Bernard Garbose, par. 5), and that the features of the machine of which plaintiffs' complain for the first time through the affidavit of their expert, Mr. Lund – namely, that the cab door may remain open while the machine operates, and that the installation of a chain which can drape across the doorway somehow encourages this – were present in the machine at the time Garbose bought it (Declaration of Wilfried Wotke, pars. 3, 5). Granted, Garbose owned and used the machine for several years. But this alone does not constitute the sort of "specialized knowledge and skill peculiar to these goods," as contemplated by *Ferragamo* and *Crooper*; that is, it is not knowledge and skill based on engineering or manufacturing related experience, and that directly

VAUGHAN, et al. v. LIEBHERR-AMERICA, INC., et al.
DEFENDANTS' MEMORANDUM OF LAW

10

treats or represents the machine's design and manufacturing choices. Moreover, it is undisputed that Garbose was unaware that these standard features in the machine presented a danger, whether latent or otherwise. (Notice of Removal, par. 3 (i); Affidavit of Bernard Garbose, par. 10.) Garbose cannot be deemed a "merchant" under these facts.

It appears plaintiffs argue that by virtue of the fact Garbose sold the subject machine along with a number of other, dissimilar items in connection with the winding down of its business, it has not made an "isolated sale," and should therefore be considered a "merchant." This simplistic approach is inconsistent with the holding in *Ferragamo*, as explained. Moreover, sales pursuant to a winding-down of one's business are by definition isolated, for a business winds down only once. But consider the implication of what plaintiffs urge here, under an analysis *reductio ad absurdum*: if familiarity with a bought and used product and the sale of the same along with other, dissimilar and familiarly used products were all that would be required to deem the product's original owner a "merchant" under 2-314, then if one were to sell at a well-advertised garage sale a used lawn-mower (no worse for wear from the time he bought it), he would be deemed a "merchant" of the same and be subject to liability for the mower's design or manufacture. *Ferragamo* does not suggest such a finding; it does not open this floodgate.

This Court should find that plaintiffs cannot make out a cause of action against Garbose for breach of the implied warranty of merchantability given the undisputed facts of this case.

***2. Plaintiffs fail to allege necessary elements of an action for breach of the implied warranty of fitness for a particular purpose; moreover, the undisputed facts preclude the possibility for stating such an action.***

VAUGHAN, et al. v. LIEBHERR-AMERICA, INC., et al.
DEFENDANTS' MEMORANDUM OF LAW

11

Under Massachusetts law, the elements of an action for breach of the implied warranty of fitness for a particular purpose are as follows: "First: that at the time of sale, the defendant knew or should have known that the buyer was looking for an item for a specific purpose; Second: that the defendant knew or should have known that the buyer was relying on the defendant's skill or judgment in selecting this particular item as suitable for that specific purpose; Next: that the buyer bought the item from the defendant; and Finally: that at the time of sale the item was not fit for that specific purpose." Model Jury Instructions/District Court, Instrn. 7.06; *see also* Mass. Superior Ct. Civil Prac. Jury Instrn., §§ 11.3.1, 14.1.17.

Plaintiffs fail to allege in their complaint that "the defendant [*i.e.*, Garbose] knew or should have known that the buyer [*i.e.*, wTe Recyling, the injured plaintiff's employer] was looking for an item for a specific purpose . . . [and] that the defendant knew or should have known that the buyer was relying on the defendant's skill or judgment in selecting this particular item as suitable for that specific purpose." It is undisputed, moreover, that Garbose was not aware that wTe Recycling (the injured plaintiff's employer) was relying on it to select an appropriate material handler, particularly since the subject never came up during conversations surrounding the sale. (Notice of Removal, par. 3 (j); Affidavit of Bernard Garbose, par. 11.)

Furthermore, given the facts of this case, it wTe Recyling could not have had a purpose for the material handler that was beyond that of its ordinary purpose, that is, the very same purpose for which Garbose used the machine – picking scrap metal. Both companies were in the same business and both had experience in using material handlers to lift and transfer scrap metal. (Notice of Removal, par. 3 (k), attaching Exhibit E;

VAUGHAN, et al. v. LIEBHERR-AMERICA, INC., et al.
DEFENDANTS' MEMORANDUM OF LAW

12

Affidavit of Barnard Garbose, par. 12.) Certainly, plaintiffs have not identified or even suggested a different, particular purpose here. Plaintiffs have developed a theory in this case (as expressed in the affidavit of its technical expert, Mr. Lund), namely, that by allowing the cab door to remain open during machine operation a dangerous condition is created and that the installation of a chain that can drape across the door opening somehow encourages this.[1] But Plaintiffs fail to explain how this claimed danger manifests itself peculiarly or particularly when using the machine in wTe Recyling's metal scrap yard, as opposed to any other metal scrap yard, including that of Garbose's. Absent a showing of such particularity, plaintiffs can never state a claim under this implied warranty. *See Fernandes v. Union Bookbinding Co.*, 400 Mass. 27, 35-36, 507 N.E.2d 728 (1987).

In *Fernandes*, the Supreme Judicial Court reversed a jury's finding that defendant's had breached the implied warranty of fitness for a particular where there was evidence that the machine failed to produce items of a quality ordinarily expected, but where there was no evidence that it failed to produce the specific item, irrespective of the quality. The court explained "that the implied warranty of fitness for a particular purpose 'envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those in envisaged in the concept of merchantability and to uses which are customarily made of the goods in question." *Fernandes*, 400 Mass. at 35. The court found that while "it is true the defect here would fall under the terms of the implied warranty of merchantability . . . § 2-315 is

---

[1] Naturally, defendants do not share Mr. Lund's views. It is their position that the installation of a chain and hook and the machine's capability of operating with the cab door open do not create unreasonably dangerous conditions or unreasonable risks of harm.

'narrower, more specific, and more precise' than the implied warranty of merchantability. . . To hold otherwise would be to merge the distinction between" the two warranties. *Fernarndes*, 400 Mass. at 36.

It should be noted that plaintiffs do not appear to justify Count VI of their complaint, alleging breach of the implied warranty of fitness for a particular purpose, in their motion to remand. It would appear, therefore, that plaintiffs concede that there is no basis for this count under the facts of this case.

This Court should find that plaintiffs cannot make out a cause of action against Garbose for breach of the implied warranty of fitness for a particular purpose given the case's undisputed facts.

### *3. Plaintiffs fail to allege necessary elements of an action for negligence against a supplier of a product manufactured by another; moreover, the undisputed facts preclude the possibility for stating such an action.*

It is a general rule under Massachusetts law that a seller of a product manufactured by another is not liable in negligence for an accident-causing defect in the same. *Enrich v. Windmere Corp.*, 416 Mass. 83, 86, 616 N.W.2d 1081 (Mass. 1993) ("Seller of a product manufactured by another is not liable in an action for negligence unless it knew or had reason to know of the dangerous condition that caused the accident."); *Fernandes v. Union Bookbinding Co.*, 400 Mass. 27, 32, 507 N.E.2d 728 (Mass. 1987); Restatement (Second) of Torts § 402 (1965). An exception to this rule exists where the seller knew *or had reason to know* that the product is likely to be dangerous for its foreseeable use, *and* where the seller *has reason to believe* that a foreseeable user will not recognize its dangerous condition. *Id.*; Restatement (Second) of Torts § 388 (1965). Under such circumstances, the extent of the seller's duty is to

VAUGHAN, et al. v. LIEBHERR-AMERICA, INC., et al.
DEFENDANTS' MEMORANDUM OF LAW

14

exercise reasonable care to inform the buyer of the dangerous condition or of the facts that make the product likely to be dangerous. Restatement (Second) of Torts § 388 (c). The seller is not required to examine the product for latent dangers, however, before selling it. Restatement (Second) of Torts § 402 (1965).

It is undisputed that Garbose did not manufacture the subject crane. In order to state a claim against Garbose in negligence, therefore, plaintiffs were required to allege the following:

1. That Garbose knew or had reason to know that the subject material handler was unreasonably dangerous, or was likely to be so, when used for its intended purpose;

2. That Garbose had no reason to believe that wTe Recyclers would realize its dangerous condition;

3. That Garbose failed to exercise reasonable care to inform wTe Recylers of the machine's dangerous condition or of facts that make it likely to be dangerous; and

4. As a consequence of the foregoing, the plaintiff was injured.

*See* Mass. Superior Ct. Civil Prac. Jury Instrn. § 11.2.6; Restatement (Second) of Torts §§ 388, 402 (1965).

Plaintiffs fail to state such allegations in Count VII (Negligence) of the their complaint. The undisputed facts, moreover, establish that Garbose did not know of any defect, patent of otherwise, in the subject machine at the time it was sold to wTe Recycling; that Garbose understood that wTe Recyling was in the business of handling scrap metal and was thus familiar with the purpose and general function of scrap handling machines; and that Garbose provided wTe Recyling with the machine's operatons manual at the time of sale. (Notice of Removal, pars. 3 (g), (i)-(k); Affidavit of Bernard Garbose,

VAUGHAN, et al. v. LIEBHERR-AMERICA, INC., et al.
DEFENDANTS' MEMORANDUM OF LAW

15

pars. 8, 10-12.) Not only have plaintiffs failed to state a claim in negligence, but on these facts they could never do so.

Plaintiffs may argue that it remains an open question as to whether Garbose *should have known* of the dangerous condition in the subject machine (as identified by plaintiffs' expert, Mr. Lund) – namely, that the cab door may remain open during machine operation and that the installation of a chain that drapes across the door opening somehow encourages this. This argument is inapposite to the uncontested facts and law, however: it assumes, contrary to fact, that Garbose had the technical experience to evaluate and assess the claimed defect (see Notice of Removal, par. 3 (i); Affidavit of Bernard Garbose, par. 10); and it assumes, incorrectly, that Garbose, as a seller of a product manufactured by another, had a duty to ascertain the existence of latent defects in the design and manufacture of the material handler (*see Fernandes*, 400 Mass. at 32-33; Restatement (Second) Torts, §§ 12, 402, Comment d).

In *Fernandes*, the trial judge read an instruction to the jury, over plaintiff's objection, stating that the defendant, an occasional seller of a product manufactured by another, was only liable for patent, not latent defects. The jury found for the defendant and the plaintiff appealed. The Supreme Judicial Court affirmed the trial court's decision, finding that because the defendant was not the manufacturer or a regular dealer of the product, its liability was limited to what it knew or had reason to know. *Fernandes*, 400 Mass. at 33. In support of this finding, the court cited with approval (at 400 Mass. 33) the Restatement (Second) Torts, § 402, which provides as follows:

> A seller of a chattel manufactured by a third person, who neither knows nor has reason to know that it is, or is likely to be, dangerous, is not liable in an action for negligence for harm caused by the dangerous character or

VAUGHAN, et al. v. LIEBHERR-AMERICA, INC., et al.
DEFENDANTS' MEMORANDUM OF LAW

16

condition of the chattel because of his failure to discover the danger by an inspection or test of the chattel before selling it.

Massachusetts law thus holds that a seller of goods manufactured by another has no duty to discover a product's dangers (particularly latent dangers) and warn the buyer thereof; its liability is limited to dangers it actually knows or "has reason to know." Moreover, the meaning of "'reason to know' implies no duty of knowledge on the part of the actor whereas 'should know' implies that the actor owes another the duty of ascertaining the fact in question." Restatement (Second) of Torts § 12 (1965), Comment a. Therefore, plaintiffs' anticipated argument that a question remains as to what Garbose *should have known* is inapposite.

It is also anticipated that plaintiffs may argue that an open question remains as to whether Garbose *should have known* that wTe Recylers would not realize a dangerous condition in the material handler, thereby creating a duty to warn on the part of Garbose. This anticipated argument is also inapposite: it assumes, again contrary to fact, that Garbose had knowledge about the general purpose and function of the product and of the claimed defect that was superior to that of the buyer, wTe Recylers (see Notice of Removal, pars. 3 (e), (i)-(k), Exhibit E; Affidavit of Bernard Garbose, pars. 6-7, 10-12); and it assumes, again incorrectly, that Garbose had a duty to ascertain the peculiar limits of the buyer's ability to realize the claimed dangerous condition (*see* Restatement (Second) Torts § 388 (b), Comment k (1965)).

Section 388 (b) provides that a seller of goods has a duty to warn of dangers if, among other things, "he has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition." The comment to this section (Comment k) elucidates this rule as follows:

VAUGHAN, et al. v. LIEBHERR-AMERICA, INC., et al.
DEFENDANTS' MEMORANDUM OF LAW

17

> One who supplies a chattel to others to use for any purpose is under a duty to exercise reasonable care to inform them of its dangerous character in so far as it is known to him, or of facts which to his knowledge make it likely to be dangerous, if, but only if, he has no reason to expect that those for whose use the chattel is supplied will discover its condition and realize the danger involved. It is not necessary for the supplier to inform those for whose use the chattel is supplied of a condition which a mere casual looking over will disclose, unless the circumstances of which the chattel is supplied are such as to make it likely that even so casual an inspection will not be made. However, the condition, although readily observable, may be one which only persons of special experience would realize to be dangerous. In such case, if the supplier, having such special experience, knows that the condition involves danger and has no reason to believe that those who use it will have such special experience as will enable them to perceive the danger, he is required to inform them of which he himself knows and which he has no reason to suppose that they will realize.

The concept of what Garbose "should have known," is thus replaced with a concept of what it was reasonable for Garbose to believe, given the nature of the defect claimed by plaintiffs and the apparent knowledge or experience of wTe Recycling.

Given the undisputed facts, what was reasonable for Garbose to believe with respect to the condition of the material handler at the time of the sale and with respect to the experience of wTe Recycling in the use of such machines? Plaintiffs argue that machine is defective because that its cab door may remain open during operation and the installation of a chain that drapes across the door opening somehow encourages this. (See Affidavit of Mr. Lund.) The fact that the door may remain open during operation and that there is a chain near the door's opening is easily discernible, however; in fact, it is obvious. Garbose did not recognize this to be a defect (See Affidavit of Bernard Garbose, par. 10.) But if it is allowed to be a defect, then it was necessarily patent. The buyer, wTe Recycling, was in the same business as Garbose – the scrap metal business – and had been for some time. (See Notice of Removal, par. 3 (k), Exhibit E.) It inspected the machine before it purchased it (or at least had the opportunity to do so). (See Affidavit of

VAUGHAN, et al. v. LIEBHERR-AMERICA, INC., et al.
DEFENDANTS' MEMORANDUM OF LAW

18

Bernard Garbose, pars. 6-7.) It had every opportunity to observe that the machine's cab door may remain open during operation and that a chain can be draped across the door opening. It was reasonable for Garbose to believe, therefore, that wTe Recyling would not have failed to "realize" these features of the machine of which plaintiffs complain and would not have failed to consider them with the same degree of concern as Garbose itself.

This Court should find that plaintiffs cannot make out a cause of action for negligence against Garbose given the case's undisputed facts.

### *4. Because the plaintiffs fail to allege necessary elements of an action for breach or warranty and negligence against a supplier of a product manufactured by another, they necessarily fail to allege the elements for their loss of consortium claims.*

Under Massachusetts law, a claim for lost consortium arises when one's spouse suffers some personal injury as a result of the negligence of a third person. *Diaz v. Eli Lilly & Co.*, 364 Mass. 153 (1973). Minors may claim loss of consortium if they can show that they are dependent on the parent. *Ferriter v. Daniel O'Connell's Sons, Inc.*, 413 N.E.2d 690, 381 Mass. 507 (1980). The spouse and minor children of an injured person may claim loss of consortium and society based upon a breach of implied warranty. *Fernandes v. Union Bookbinding Co., Inc.*, 507 N.E.2d 728, 400 Mass. 27, (1987)

Although Massachusetts courts have determined that a claim for loss of consortium is independent of the spouse's cause of action, the cases have not repudiated the implicit prerequisite that the injured spouse or parent have a viable claim. *Mouradian v. General Electric Co.*, 23 Mass.App.Ct. 538, 544 (1987)

Because the injured spouse and parent in this case cannot make out a cause of action for negligence or breach of warranty against Garbose given the case's undisputed

VAUGHAN, et al. v. LIEBHERR-AMERICA, INC., et al.
DEFENDANTS' MEMORANDUM OF LAW

19

facts, the consortium plaintiffs necessarily cannot make out a cause of action for loss of consortium.

## CONCLUSION

For the reasons discussed above, this Court is requested to find that plaintiffs cannot make out a claim against Garbose in breach of implied warranties, negligence, or loss of consortium, and to issue an order dropping Garbose from the lawsuit and denying plaintiffs' motion to remand.

Respectfully submitted by

Joseph N. Stella, Esq.
Jeffrey W. Gunn, Esq.
MORRIS & STELLA
200 W. Adams, Suite 1200
Chicago, IL 60606
(312) 782-2345

and

John F. Dalsey, Esq.
DALSEY, FERRARA & ALBANO
73 State Street, Suite 101
Springfield, MA 01103
(413) 736-6971

Attorneys for Defendants,
LIEBHERR-AMERICA, INC., LIEBHERR
MININING AND CONSTRUCTION
EQUIPMENT, INC., LIEBHERR CRANE CORP.,
LIEBHERR CRAWLER CRANE COMPANY,
LIEBHERR CONSTRUCTION EQUIPMENT
COMPANY, LIEBHERR MINING EQUIPMENT
COMPANY, and LIEBHERR CRANES, INC.

DATED: October 6, 2005